IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE Z., o/b/o CLAUDETTE H., <br>     Plaintiff, <br>     v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>     Defendant. | No. 17 C 6977 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff George Z.'s claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on behalf of his wife. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which the Court will construe as motion for summary judgment [Doc. No. 13] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff's wife Claudette H. filed her application for DIB on May 21, 2008, alleging disability due to spinal deformity and arthritis. (110–13, 151–57.) Her

1

application was denied initially and again upon reconsideration. (R. 50, 51.) She requested a hearing and on December 1, 2009, appeared and testified, without representation, before an Administrative Law Judge ("ALJ"). (R. 26–49.) On February 4, 2010, the ALJ issued an unfavorable decision, which the Appeals Council affirmed. (R. 1–4, 17–22.) Subsequently, she filed a civil action in the United States District Court for the Northern District of Illinois on January 26, 2011. (R. 438.) On July 30, 2012, the case was remanded for further administrative proceedings. (R. 418–40); *see Hurt v. Astrue*, No. 10 C 8301, 2012 WL 3101712 (N.D. Ill. July 30, 2012).

On March 14, 2013, Claudette appeared and testified at a supplemental hearing before the same ALJ who presided over the December 2009 hearing, and she was represented by counsel.[1] (R. 345–402.) Medical expert Dr. Carl Leigh and vocational expert Glee A. Kehr also testified. (*Id.*) On April 24, 2013, the ALJ issued a partly favorable decision, finding Claudette eligible for DIB as of May 2011. (R. 321–37.) The ALJ however, found she was not disabled for the period from April 2008 to May 2011. (*Id.*) On February 8, 2014, Claudette passed away, and shortly thereafter, George was substituted as Plaintiff, and he appealed the unfavorable aspect of the ALJ's decision. (R. 884.) On October 20, 2015, the case was again remanded for further proceedings. (R. 857–80); *see Zimmerman v. Colvin*, No. 14 C 5300, 2015 WL 6163614 (N.D. Ill. Oct. 20, 2015).

---

[1] On January 31, 2011, while her original application was pending on appeal, Claudette submitted a new DIB application alleging disability due to Scheuermann's kyphosis, spinal stenosis, degenerative osteoarthritis, diabetes, high blood pressure, and high cholesterol. (R. 547–54.) The second application was consolidated with the earlier application. (R. 321.)

2

On June 8, 2016, George appeared and testified at a third hearing, this time in front of a different ALJ. (R. 775–806.) On November 4, 2016, the ALJ issued an unfavorable decision. (R. 750–65.) The Appeals Council denied review on July 24, 2017, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 740–43.)

## II.   ALJ DECISION

At step one, the ALJ determined that Claudette had not engaged in substantial gainful activity during the period from her alleged onset date through December 31, 2012, her date last insured. (R. 753.) At step two, the ALJ found that Claudette suffered from the severe impairments of osteoarthritis and degenerative disc disease of the lumbar spine. (*Id*.) However, at step three, the ALJ determined that through the relevant period of April 2, 2008 to May 27, 2011, Claudette did not have an impairment or combination of impairments that met or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526); (R. 753–58.)

Before step four, the ALJ found that Claudette retained the residual functional capacity ("RFC") to perform work at a sedentary exertional level, subject

to some limitations.[2] (R. 758.) At step four, the ALJ concluded that Claudette was capable of performing her past relevant work as a data entry clerk and therefore was not disabled under the Act. (R. 764–65.)

## DISCUSSION

I.    **ALJ STANDARD**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

---

[2] Claudette would need to alternate her position between sitting, standing, and walking for no more than one minute out of every hour. While alternating her position, she would need to be off task. She could occasionally climb ramps and stairs; could occasionally stoop, kneel, balance, crouch, and crawl; but could never climb ladders, ropes, or scaffolds. She could frequently use her hands to perform gross manipulation, but she could not perform forceful grasping or torqueing. She was not capable of using vibrating hand tools. She was limited to working in non-hazardous environments, *i.e.,* no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she had to avoid concentrated exposure to unguarded hazardous machinery and temperature extremes. (R. 22, 758.)

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Court's reviewing the ALJ's decision play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision is erroneous because the ALJ's proffered RFC was not supported by substantial evidence, and the ALJ's credibility determination was flawed. Because the RFC determination was based on the ALJ's assessment of Claudette's credibility with respect to her symptoms, the validity of that assessment is crucial when analyzing the ALJ's RFC conclusion.[3] *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012) (noting that RFC assessments will often "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [her] symptoms"); *see also Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) (unpublished decision) (explaining that "RFC determinations are inherently intertwined with matters of credibility").

Generally, an ALJ's credibility determination is granted substantial deference by a reviewing court and will only be overturned if it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder*, 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"); *see also Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (explaining that ALJ "credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses").

---

[3] The SSA has clarified that SSR 16-3p, "Evaluation of Symptoms in Disability Claims," applies when ALJs "make determinations on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued the decision on November 4, 2016, and therefore SSR 16-3p applies.

7

The ALJ, however, must give specific reasons for discounting a claimant's testimony and those "reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887–88); *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011) (stating that the ALJ must "explain her decision in such a way that allows [the court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record").

Plaintiff argues, in part, that the ALJ's sit/stand option,[4] under which Claudette would need to alternate between sitting, standing, and walking for no more than one minute out of every hour, was not supported by substantial evidence. The Court agrees, because the ALJ's sit/stand option was predicated on a faulty analysis of Claudette's subjective complaints. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (explaining that the ALJ's credibility determination affected his findings as to the extent of plaintiff's limitations, which in turn impacted the outcome at step five).

---

[4] SSR 96-9p notes that where scheduled breaks are not enough, the individual may need an accommodation to alternate between sitting, standing, and possibly walking. Depending on the facts, the accommodation may erode the number of jobs. In this case, one VE testified that a sit/stand option, where the hypothetical employee could only sit for thirty minutes at a time, and then would need a fifteen-minute break to walk around, would eliminate Claudette's past work. (R. 399–400.) A second VE testified that alternating positions for five minutes out of every hour would be inconsistent with Claudette's past work. (R. 802–04.)

In July 2008, Claudette completed a physical impairment questionnaire, in which she noted she could not sit for prolonged periods of time because of her back and hip pain. (R. 160.) She had been treated for hip and back pain and sciatica as recently as April 2008. (*See* R. 263-65.) During a July 26, 2008 consultative exam ("CE") she explained that her back pain, which she described as constant, would radiate to "both lower extremities from the hips to the toes" and that the pain was associated with lower extremity numbness on the left side. (R. 217.) She reported that she could sit for about thirty minutes at a time. (R. 218.) Subsequently, during a May 28, 2011 CE, Claudette again reported back pain and "radiation to both hips and ankles" but stated that she could sit up to one hour. (R. 684–85.) At her second hearing, in 2013, which was after her date last insured, she testified that she could only sit for thirty minutes at a time because of leg and hip pain (R. 391.) Claudette explained that after sitting for thirty minutes, she needed a fifteen-minute break to move her legs around, either by wiggling them in a chair or by walking around, depending on the level of pain. (*Id.*)

The ALJ rejected Claudette's claim that she needed a fifteen-minute break to move around, reasoning that "there was no evidence supporting the extent of the limitations she reported" during the period at issue. (R. 762.) However, the ALJ's reasons for discounting Claudette's testimony, including lack of treatment, conservative treatment, lack of objective evidence, and inconsistent statements, were not supported by substantial evidence.

In discounting Claudette's testimony on the basis that she did not seek treatment, the ALJ failed to consider her lack of insurance. It is well established that an ALJ cannot simply rely on a lack of treatment to draw a negative inference about the person's credibility without first exploring a person's reasons for lack of treatment. *Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012); *see also* SSR 16-3p at *9 (noting that a valid reason for not seeking treatment includes an inability to afford it). That is particularly true here, where the ALJ was put on notice of Claudette's inability to afford treatment. For example, March 2009 treatment notes indicated she did not have insurance, (R. 247); in February 2011 she reported she could not afford an x-ray of her back, (R. 645); and in 2013 Claudette testified that she could not afford a third back surgery because of a lack of insurance, (R. 392). There is no indication in the decision, however, that the ALJ considered this evidence.

Relatedly, the ALJ took issue with the fact that Claudette did not undergo a third back surgery. According to the ALJ, Claudette was offered surgery as a treatment option, but she chose to undergo physical therapy instead. (R. 756.) However, the ALJ did not explain how Claudette's decision to attempt physical therapy before undergoing a third surgery undermined her complaints. *See McGinnis-Overton v. Barnhart*, No. 02 C 5726, 2003 WL 22006252, at *5 (N.D. Ill. Aug. 20, 2003) (noting that courts are "reluctant to require a plaintiff undergo back surgery before he or she can be found disabled"). Furthermore, there is no evidence in the record that Claudette affirmatively declined surgery. Rather, it seems she

was unable to afford the procedure, which, as noted above, the ALJ failed to consider. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding the ALJ erred by basing his credibility finding on plaintiff's decision "not to undergo invasive and expensive surgery, without inquiring into her reason for doing so"); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (holding that it was "legal error" for the ALJ not to consider the reasons for a claimant's decision not to have surgery). The ALJ improperly drew a negative inference from Claudette's lack of treatment without taking into account her documented inability to afford treatment.

The ALJ also seemed to mischaracterize Claudette's treatment as conservative. According to the ALJ, "[i]f [her back pain] were as severe as alleged, one might expect her doctors to advise additional evaluation or treatment." (R. 761.) It is unclear what additional treatments the ALJ had in mind. Claudette was recommended back surgery, (R. 269, 284); she had a lumbar discectomy and laminectomy in 2009, (R. 685); she underwent steroid injections, (R. 270–71, 278–81); and received pain medication, (R. 650–51). This level of treatment appears to support, not minimize, her claims of pain and limitations. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (unpublished decision) (criticizing the ALJ for failing to explain how continuous efforts to treat pain with medication and surgery undermined the plaintiff's allegations of pain); *see also Huber v. Berryhill*, 732 F. App'x 451, 456 (7th Cir. 2018) (unpublished decision) (finding that receiving spinal injections and radiofrequency ablation bolstered the plaintiff's pain allegations, and

the ALJ erred by determining that the lack of recommendations for back surgery or narcotics meant that his treatment was conservative).

Next, the ALJ discounted Claudette's testimony because he believed her back pain should have been accompanied by neurological abnormalities, such as weakness or abnormal sensation, in the lower extremities. (R. 761.) The ALJ's conclusion however, is not supported by any medical evidence in the record and simply amounts to him improperly playing doctor. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

The Commissioner attempts to justify the ALJ's reasoning by repeatedly noting that no doctor opined that Claudette had more limitations than the ALJ incorporated into his RFC assessment. While true, Claudette herself testified that she had additional limitations, and her testimony cannot simply be disregarded. *See id.* at 869. It is unknown whether the ALJ's conclusions would have been different had he properly consider her subjective complaints, but it was legal error not to engage in the analysis. *See id.* ("We are not confident that the ALJ would have reached the same conclusion about [the plaintiff's] credibility had she not inappropriately 'played doctor,' ignored possible explanations for [his] conservative treatment, and conflated a desire to work with the ability to do so. So the ALJ's errors are not harmless.").

Based on the above errors and viewing the record as a whole, the Court concludes that the ALJ's adverse credibility determination was inadequate and not supported by substantial evidence. The Court however, does not hold that the ALJ

was required to accept Claudette's testimony. On remand, the ALJ is advised to carefully consider Plaintiff's testimony and allegations in light of the recent guidance provided by SSR 16-3p.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for reversal or remand is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is denied. This matter is remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**             **ENTERED:**

*[signature: Maria Valdez]*

**DATE:　April 1, 2019**

                                       **HON. MARIA VALDEZ**
                                       **United States Magistrate Judge**